T.C. Summary Opinion 2012-54

UNITED STATES TAX COURT

STAN B. VAUGHAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3597-10S.                    Filed June 13, 2012.

Stan B. Vaughan, pro se.

<u>Wesley J. Wong</u>, for respondent.

SUMMARY OPINION

GERBER, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies in petitioner's 2007 and 2008 Federal income tax of $3,693 and $3,330, respectively. The deficiencies for both years are attributable to respondent's disallowance of petitioner's casualty and theft loss deductions. We consider here whether petitioner is entitled to any part of the claimed deductions. In addition, petitioner contended that for tax years 2007 and 2008 respondent's statutory notice of deficiency was either rescinded or invalid, and we consider the merits of those contentions.

## Background[2]

On Schedule A, Itemized Deductions, of his 2007 Federal income tax return (return) petitioner claimed a casualty or theft loss deduction of $36,302.57. Petitioner explained on his 2007 return that the loss was attributable to the

---

[2]This case is procedurally unusual. At trial the parties presented 31 stipulated documents. Petitioner, who bears the burden of showing that respondent's determinations are in error, chose not to testify, even though the Court thoroughly explained the procedures. The Court asked the parties to provide a written explanation of the evidence to assist the Court in better understanding the significance of each document and how it did or did not show that respondent erred. The Court advised the parties that their explanations did not constitute evidence but were to assist the Court in understanding the evidence. For the most part, petitioner's explanations in his posttrial documents filed with the Court consisted of procedural reasons why the notice of deficiency was either rescinded or invalid.

embezzlement of his campaign funds[3] by someone who had signature authority on his political campaign account. Likewise, on his 2008 return petitioner claimed a $46,470.87 casualty loss deduction and explained that it was attributable to the loss of personal property connected with Itex Corp. (Itex). For each year the amount of the casualty loss exceeded the amount of income petitioner reported so that he reported no tax liability. The amounts of the income tax deficiencies represent the amounts of tax that petitioner would have been liable for had he not claimed the loss deductions.

On March 30, 2009, respondent notified petitioner that his 2007 return had been selected for examination. The notification letter for 2007 set an appointment date of May 20, 2009, and indicated that petitioner's "Casualty and Theft Loss" was being questioned. The letter listed the type of proof that petitioner could use to substantiate a loss. Petitioner requested that the appointment be moved to May 12, 2009, and the examiner agreed. Petitioner attended and began to set up a recording device. The examiner advised that, although a taxpayer has a right to make a recording of an examination, the taxpayer must provide 10 days' notice. The examiner noted that petitioner in an April 3, 2009, letter stated that he did not waive his right to make a recording, but he did not state that he intended to make one.

---

[3]Petitioner ran for the Nevada State Assembly during 2006.

Petitioner did not provide the examiner with any documents or statements in support of his reported loss.

On June 1, 2009, respondent sent petitioner a second notification that the casualty and theft loss deduction on his 2008 return was being questioned and the return had been selected for examination, also listing the type of proof that could be used to substantiate a loss. The notification letter for 2008 did not set an appointment date and, instead, requested that petitioner call the examiner within 10 days to schedule an appointment. Different examiners had originally been assigned for the 2007 and 2008 tax years; ultimately, however, a single examiner handled the case.

Petitioner in a letter dated June 4, 2009, sent by certified mail June 5, 2009, responded to the 2008 examination notification, advising that he would like the examination to take place "on any date after July 25, 2009" and that he intended "to make a sound recordings of any meetings with examination personnel". Also in a separate letter dated June 4, 2009, petitioner wrote to respondent regarding the examination for his 2007 tax year. Apparently, respondent's notification had a misplaced comma so that the examination for the year 2007 was shown as

"200,712".[4]  Petitioner made light of the fact that he doubted that he would likely not "still be around in another 198,603 years."  In that letter petitioner notified respondent that he intended to make sound recordings of any examinations by respondent.

Petitioner did not satisfy the tax examiner with respect to the claimed deductions.  The tax examiner's report dated June 12, 2009, proposed to disallow the loss deductions claimed for 2007 and 2008 and had the same proposed income tax deficiencies as were eventually set forth in the notice of deficiency.  Petitioner filed a protest that respondent received on June 23, 2009, but no changes were made to the proposed deficiencies.  Petitioner then requested an Appeals review.  Petitioner did not contact the examiner to schedule an appointment to meet and/or to provide supporting documentation.  Along with petitioner's protest he provided some documentation, but the examiner did not find it sufficient to substantiate petitioner's losses.

On July 5, 2009, petitioner advised the examiner that his formal response to the protest was "unacceptable".  In a letter dated November 24, 2009, petitioner sent to respondent's counsel a letter, which among other matters proposed that the

---

[4]We assume that the intended designation by respondent was "2007, 12", which likely indicated that the year was 2007 and the period under examination was 12 months or a calendar year.

notice of deficiency be rescinded. Petitioner enclosed a Form 8626, Agreement to Rescind Notice of Deficiency, signed by him, urging respondent to reach agreement on that matter. Petitioner suggested that this action was appropriate because he had not been afforded the opportunity to pursue a proper appeal. Along with the Form 8626, petitioner sent a Form 872, Consent to Extend the Time to Assess Tax, that would have extended the assessment period to March 22, 2012.

The statutory notice of deficiency was mailed to petitioner on November 19, 2009, and he timely petitioned this Court. After his case was docketed with this Court, a July 26, 2010, letter from Appeals offered petitioner a settlement conference with Appeals concerning his 2007 and 2008 tax years. That letter stated that petitioner would be given the opportunity to provide more information about the theft loss connected with his political campaign for 2007. The letter noted that petitioner had indicated that he had lent the money to his political campaign and inquired as to why it was not reported as a "bad debt expense" as opposed to a theft loss. With respect to 2008, the Appeals letter indicated that the loss deduction claimed for 2008 was in connection with an "Intagio account" and that Intagio had been bought out by a competitor and was to have honored petitioner's account balances. It noted that petitioner had indicated that

the new company would not honor his account because he worked for a competitor.

In a Nevada financial disclosure statement, filed May 3, 2006, petitioner indicated that his sources of income were his service in the Nevada State Assembly, employment by the U.S. Postal Service, and a position as an officer of the World Chess Federation. As a Nevada assemblyman, petitioner was required to report the sources and expenditures of funds received in his election campaign. For 2006 petitioner reported that he received more than $500,000, most of which he contributed to himself to run his campaign.

## Discussion

We first consider whether the notice of deficiency that underlies the petition was valid. Petitioner argues that respondent's failure to sign and/or to notify petitioner that respondent's agent did not execute the Form 8626 that petitioner had signed and sent to respondent, coupled with the fact that petitioner did not receive an Appeals hearing, is tantamount to respondent's concession of the case.

This Court's deficiency jurisdiction is dependent upon the issuance of a valid notice of deficiency and the timely filing of a petition. See Rule 13; Monge v. Commissioner, 93 T.C. 22, 27 (1989). The Court has jurisdiction to decide whether it has jurisdiction in a particular case. See, e.g., Kluger v. Commissioner, 83 T.C.

309 (1984).  The record reflects that a notice of deficiency was issued to petitioner and that he timely filed a petition seeking redetermination of respondent's deficiency determinations for his 2007 and 2008 tax years.  Petitioner has not provided any authority for the proposition that a taxpayer's proposal that an outstanding notice of deficiency be rescinded becomes unilaterally effective where the Commissioner takes no action.  Although the Commissioner has authority to rescind a notice of deficiency, there is no indication that the parties reached a mutual understanding or agreement regarding rescission of the notice in this case.  Section 6212(d) provides the Secretary with authority to rescind a notice of deficiency.  It is integral to the meaning of that statute that there be mutual consent between a taxpayer and the Secretary to effect a rescission.  See, e.g., Slattery v. Commissioner, T.C. Memo. 1995-274.

Petitioner contends, in effect, that he was not provided with due process and, accordingly, that the notice is invalid because of constitutional violations.  In making this argument, petitioner seeks to go behind the notice of deficiency and have the Court consider whether the notice is valid.  See Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324 (1974).  On the basis of the documents stipulated by

the parties,[5] it does not appear that petitioner was denied due process in connection with administrative examination for his 2007 and 2008 tax years. Although in the first instance petitioner was not afforded a full opportunity to show that he was entitled to the loss deductions in issue, he was not denied a conference or Appeals hearing. It was petitioner's choice not to respond to respondent's offers to discuss his case and/or to present evidence to support the loss deductions claimed. Respondent's issuance of a notice of deficiency was sufficient to provide this Court with jurisdiction over the subject matter of petitioner's 2007 and 2008 tax years. See sec. 6212(d). Accordingly, we hold that the notice of deficiency for 2007 and 2008 is valid.

Next we consider whether petitioner has shown that he is entitled to deductions for a casualty or theft loss for 2007 and/or 2008. Petitioner bears the burden of substantiating the claimed losses. See sec. 6001; Rule 142(a). The record in this case, consisting of documents agreed to by the parties, shows that petitioner claimed loss deductions on his 2007 and 2008 returns. See sec. 165.

---

[5]We reiterate that petitioner was thoroughly advised about the possible need to give testimony, call witnesses, and present documents when this case was called for trial. Although given the opportunity, he chose to rely entirely on the documents offered to the Court. On the basis of the records offered, it does not appear that petitioner was denied due process in the administrative portion of this case.

It shows that petitioner was involved in a political campaign for a Nevada Assembly seat and that money reportedly was received and, to some extent, spent for that purpose. It does not show, as petitioner claims, that for 2007 someone embezzled more than $36,000 from his political campaign funds. The record is void of any evidence that petitioner suffered a loss that is deductible for 2007 or that he had lent the money to his campaign and incurred a loss from a bad debt.

With respect to the claimed loss of more than $46,000 for 2008, petitioner claimed on his return that it was attributable to Itex. There is no evidence in the record, however, that indicates the nature of petitioner's relationship to Itex or why that relationship resulted in a loss that he could deduct for his 2008 tax year.

Petitioner has not provided the Court with any evidence that would support deductions for casualty or theft losses for 2007 and 2008. The losses have merely been identified and have not been substantiated. Petitioner failed to present any substantial evidence to respondent in the administrative portion of this case. Instead, he mounted a procedural approach/attack, both during the examination and in the controversy before this Court. Petitioner has not provided evidence of his alleged losses, and we accordingly hold that he is not entitled to deductions for casualty or theft losses for 2007 and 2008.

In view of the foregoing,

<u>Decision will be entered</u>

<u>for  respondent</u>.